Patrick J. Lewallen, # 7-5544
Thomas A. Valdez, # 6-3302
CHAPMAN VALDEZ & LANSING
125 West 2nd St.
Casper, WY 82602
Phone:      307.237.1983
Facsimile:  307.577.1871
E-mail:     plewallen@bslo.com
            tvaldez@bslo.com

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2019 OCT 25  PM 3:48

MARGARET BOTKINS, CLERK
CASPER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| DIAN HARTLEY, PATRICK CROFOOT, AND TAYLOR HARTLEY, <br><br> Plaintiffs, <br><br> v. <br><br> JENNY LAKE LODGE, INC. A WYOMING CORPORATION, <br><br> GRAND TETON LODGE COMPANY A WYOMING CORPORATION, <br><br> VAIL RESORTS, INC. D/B/A JENNY LAKE LODGE, GRAND TETON LODGE COMPANY, A DELAWARE CORPORATION, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 19-CV-224-ABJ |

## COMPLAINT

**COME NOW,** Plaintiffs, Dian Hartley, Patrick Crofoot and Taylor Hartley, accompanied by their attorneys, Patrick J. Lewallen and Thomas A. Valdez, of CHAPMAN VALDEZ & LANSING, and submit this *Complaint* against Jenny Lake Lodge, Inc., Grand Teton Lodge Company, Vail Resorts Lodging Company, and Vail Resorts, Inc. d/b/a/ Jenny Lake Lodge, Grand Teton Lodge Company (collectively the "Defendants"), and state and allege as follows:

Receipt # CAS002307
Summons: 3  issued
         ___ not issued

## PARTIES

1. Plaintiff Dian Hartley is a resident of the state of Florida.

2. Plaintiff Patrick Crofoot, Dian Hartley's husband, is also a resident of the state of Florida.

3. Plaintiff Taylor Hartley, the granddaughter of Dian Hartley and Patrick Crofoot, is also a resident of the state of Florida.

4. Defendant Jenny Lake Lodge, Inc. is a Wyoming corporation with its principal place of business in Broomfield, Colorado.

5. Defendant Grand Teton Lodge Company is a Wyoming corporation with its principal place of business in Moran, Wyoming.

6. Defendant The Vail Resorts, Inc. d/b/a/ Jenny Lake Lodge, Grand Teton Lodge Company, is a Delaware corporation doing business in Wyoming.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

8. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

9. In 2017, Dian Hartley planned a family vacation to Wyoming. Joining Ms. Hartley on the trip was Patrick Crofoot, her husband, Taylor Hartley, her granddaughter, and Drew Wamser, her future grandson-in-law (collectively the "Hartleys").

10. The Hartleys selected Jenny Lake Lodge in Grand Teton National Park for their lodging.

11. The Hartleys booked the 2017 Jenny Lake Signature Stay package that included a two-night stay in Jenny Lake Lodge's advertised "finest lodging" and "only 4-Diamond eco-resort in Grand Teton National Park."

12. On the evening of August 2, 2017, the first night of their stay, Ms. Hartley awoke to something buzzing above her head as she slept.

13. When the creature would not leave her alone, Ms. Hartley woke her husband to assist.

14. Mr. Crofoot left the bed and turned on a light to examine the situation. Ms. Hartley and Mr. Crofoot were instantly surprised to learn that the creature, that was first thought to be a moth, was a bat inside of their room.

15. While outside the comfort of his bed, Mr. Crofoot was bitten on his left foot by the bat.

16. Startled, Mr. Crofoot was finally able to shoo the bat into the living room so it could escape through the front door.

17. Shortly afterward, Ms. Hartley and Mr. Crofoot discovered that Taylor Hartley and Drew Wamser had a similar experience while sleeping in the living room.

18. Taylor Hartley also awoke to a bat buzzing through the living room, and Drew Wamser crawled across the floor to open the front door so it could escape.

19. After the bat exited their dwelling, the Hartleys could hear several other bats in the attic "squeaking." Eventually the Hartleys were able to fall back asleep after the squeaking subsided.

20. The next morning, the Hartleys immediately told the staff at Jenny Lake Lodge about the bats in their cabin.

21. Jenny Lake Lodge did not offer or suggest any medical treatment, but did apologize for the inconvenience and said they would move the Hartleys to another cabin.

22. Unaware of any dangers the bats posed, the Hartleys went on various excursions and came back 7-8 hours later to find their luggage moved to another cabin.

23. Mr. Crofoot walked over to their cabin from the night before and saw a maintenance man repairing holes in the screen wire that covers the cabin soffits and patching small holes in the siding where the bats could get in.

24. The following morning, August 4, 2017, as the Hartleys were having breakfast at Jenny Lake Lodge, they noticed a newspaper article in *Jackson Hole News and Guide* titled, "Students get rabies shots after bat exposure,". A copy of the article is attached hereto as "**Exhibit 1.**"

25. From the article the Hartley family learned that just days prior students were exposed to bats under similar circumstances in Grand Teton National Park and "the exposure was taken seriously because rabies is nearly universally fatal and there is no effective treatment once symptoms present themselves." *Id.*

26. As soon as the Hartleys read the article they went to the front desk to discuss the same with Jenny Lake Lodge staff.

27. A Jenny Lake Lodge staff person downplayed the article and did not offer medical assistance nor suggest the Hartleys seek any. As the Hartleys checked out of the hotel, the General Manager, Rachel Busch, offered to refund one night's stay for their inconvenience. At no point did she suggest the Hartleys seek medical treatment.

28. The Hartleys continued their vacation and traveled to Yellowstone National Park, unaware of the urgency to seek medical treatment.

29. On or about August 5, 2017, as the Hartleys were driving through Mammoth Hot Springs, Mr. Crofoot received a phone call from Jenny Lake Lodge.

30. A lodge employee, believed to be Andy Johnson, identified himself as the Environmental Health and Safety Director of Jenny Lake Lodge, and told the Hartleys that he had spoken with Jenny Lake Lodge's risk management and instructed the Hartleys that they must seek medical attention immediately at Jenny Lake Lodge's expense.

31. The employee advised Mr. Crofoot that all the Hartleys should go to St. John's Medical Center in Jackson, Wyoming and begin the series of shots to treat rabies. He continually stressed that Jenny Lake Lodge would cover all the Hartleys' medical expenses and emphasized the medical urgency to receive treatment. He also told the Hartleys that he "had no idea there were so many bats in that cabin."

32. Shocked, the Hartleys immediately began searching for the rabies vaccine.

33. The Hartleys contacted the local clinic in Mammoth, Wyoming and found out the clinic did not stock the necessary rabies vaccine. They called the nearest hospital and spoke to an ER nurse who said it takes at least a week for rabies symptoms to appear so the Hartleys would have time to return to Florida before they had to begin the series. They next called St. John's Medical Center.

34. The news from Jenny Lake Lodge was especially concerning to Mr. Crofoot because he suffers from Parkinson's Disease and underwent deep brain surgery only a year before this incident to implant a device in his brain to help with his Parkinson's symptoms.

35. On the morning of August 8, 2017, the Hartleys left Yellowstone and drove straight to St. John's Medical Center as instructed by Jenny Lake Lodge.

36. When they arrived at the hospital, the ER doctor informed the Hartleys that the Center for Disease Control categorizes bat exposure as a medical urgency and recommends that people receive rabies immunization if exposure occurs when they wake up in a room with a bat or have any direct exposure to a bat.

37. The Hartleys explained to St. John's that Jenny Lake Lodge told the Hartleys to inform St. John's that Jenny Lake Lodge was the responsible party for payment.

38. Jenny Lake Lodge contacted St. John's the same day and confirmed that the bill was to be paid by Grand Teton Lodge Company, Jenny Lake Lodge, and left contact information for Andy Johnson, the Environmental Service Manager, and Rachel Busch, the General Manager. "**Exhibit 2**" attached hereto- *Billing Notes dated August 8, 2017.*

39. The Hartleys each received five shots that day and flew home the next day.

40. Ms. Hartley and Mr. Crofoot received their follow-up booster shots in Florida where they live. Taylor Hartley received her first follow-up booster shot in Florida and the remainder in Georgia where she attended college.

41. On or about August 29, 2017, Andy Johnson from Grand Teton Lodge Company, Jenny Lake Lodge called St. John's and stated "yes they were going to pay for the [Hartleys'] bill" and asked that the Hartleys' bills be sent to Grand Teton Lodge, ATTN: Andy Johnson, P.O. Box 250, Moran, Wyoming 83013. **Ex. 2** at *August 29, 2017 entry.*

42. The Hartleys and St. John's Medical Center provided Grand Teton Lodge Company and Jenny Lake Lodge all their medical bills as instructed, but Grand Teton Lodge Company and Jenny Lake Lodge refused to pay for any of the medical bills.

## COUNT I
## NEGLIGENCE OF DEFENDANTS

For their first cause of action against the Defendants, Plaintiffs hereby incorporate by reference those items set forth in the paragraphs 1-42 above, and further state and allege the following:

43. The Defendants had a duty to care and control Jenny Lake Lodge and its premises, as to prevent injury to Defendants' guests.

44. The Defendants also had the duty to provide a reasonably safe dwelling to its invited guests.

45. The Defendants had the duty to warn its invitees of the known danger that rooms may contain dangerous animals.

46. The Defendants failed to maintain their premise as to prevent injury to its guests.

47. The Defendants failed to provide a reasonably safe dwelling space for its invited guests.

48. The Defendants failed to give any warning to its invited guests that the dwellings they purchased may contain dangerous conditions.

49. The Defendants breached numerous duties of care the Defendants owed to the Hartleys.

50. It is the natural and probable consequence that invited guests would be injured for the Defendants' failure to provide the proper care and control for their premise.

51. It is also the natural and probable consequence that invited guests would be injured by the Defendants' failure to ensure that the rooms purchased by its invited guests were reasonably safe.

52. It is also the natural and probable consequence that invited guests would be injured by the Defendants' failure to give warning that dwellings purchased by their invited guests may contain dangerous conditions.

53. The Hartleys' injures were foreseeable in light of the Defendants' breach of the duties of care the Defendants owed to the Hartleys.

54. As a result of the Defendants' failures, the Hartleys suffered severe injuries and damages, including, but not limited to, expenses for past, present and future medical treatment; past, present and future mental anguish and physical pain and suffering; emotional distress; and past, present and future loss of enjoyment of life.

## COUNT II
## NEGLIGENT MISREPRESENTATION RESULTING IN FINANCIAL LOSS

For the second cause of action against the Defendants, the Hartleys hereby incorporate by reference those items set forth in the paragraphs 1-54 above, and further state and allege the following:

55. On or about August 5, 2017, as the Hartleys were driving through Mammoth Hot Springs, Mr. Crofoot received a phone call from the Defendants.

56. In a phone call, an employee of the Defendants, believed to be Andy Johnson, identified himself as the Environmental Health and Safety Director of Jenny Lake Lodge, and told the Hartleys that he had spoken with Jenny Lake Lodge's risk management and instructed the Hartleys that they must seek medical attention immediately at Jenny Lake Lodge's expense.

57. The employee advised Mr. Crofoot that all the Hartleys should go to St. John's Medical Center in Jackson, Wyoming and begin the series of shots to treat rabies.

58. The employee continually stressed that Jenny Lake Lodge would cover all the Hartleys' medical expenses and emphasized the medical urgency to receive treatment.

59. The Hartleys left Yellowstone and drove to St. John's Medical Center as instructed by Jenny Lake Lodge.

60. When they arrived at the hospital, the ER doctor informed the Hartleys that the Center for Disease Control categorizes bat exposure as a medical urgency and recommended that if exposure occurs when you wake up in a room with a bat or have any direct exposure to a bat to receive immunization.

61. The Hartleys explained to St. John's that Jenny Lake Lodge told the Hartleys to inform St. John's that Jenny Lake Lodge was the responsible party for payment.

62. Billing notes show that Jenny Lake Lodge contacted St. John's the same day and confirmed that the bill was to be paid by Grand Teton Lodge Company, Jenny Lake Lodge, and left contact information for Andy Johnson, the Environmental Service Manager, and Rachel Busch, the General Manager. **Ex. 2-** *Billing Notes dated August 8, 2017.*

63. St. John's confirmed the same by telling the Hartleys that Grand Teton Lodge Company and Jenny Lake Lodge informed St. John's that they would be paying the Hartleys' medical bills.

64. The Hartleys provided Grand Teton Lodge Company and Jenny Lake Lodge all their medical bills as instructed, but Grand Teton Lodge Company and Jenny Lake Lodge refused to pay for any of the medical bills.

65. The Defendants, through an employee, supplied the Hartleys with false information. The Defendants told the Hartleys that Jenny Lake Lodge would pay for their medical treatment.

66. The Defendants gave the Hartleys false information for the Plaintiffs' guidance on their urgent medical treatment.

67. The Defendants failed to use reasonable care in communicating the information that they would pay for the Plaintiffs' medical treatment.

68. The Hartleys justifiably relied and sought medical treatment based off the Defendants' representations.

69. As a result of the Hartleys' reliance, they suffered economic damages.

## COUNT III
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

For the third cause of action against the Defendants, Plaintiffs hereby incorporate by reference those items set forth in the paragraphs 1-69 above, and further state and allege the following:

70. Patrick Crofoot was bitten by a potentially rabid bat, and Dian and Taylor Hartley were exposed to some bats during their stay at the Defendants' premise.

71. Rabies can create a substantial risk of death or a protracted loss or impairment of bodily organs.

72. This is especially true in Patrick Crofoot's case, because he suffers from Parkinson's Disease and underwent deep brain surgery only a year previous to this incident to implant a device in his brain to help with his Parkinson's symptoms.

73. The Hartleys' exposure to the potentially deadly bats happened at the same time.

74. Each Hartley either observed the exposure or observed the results of the exposure without material change in the condition and location of the other Hartleys.

75. The Defendants were responsible for exposing the Hartleys to the dangerous bats.

76. It was also foreseeable that the Hartleys would be mentally harmed by being exposed to potentially rabid bats.

77. The Hartleys experienced mental anguish by their exposure to the dangerous animals while at the Defendants' lodge.

## COUNT IV
## PROMISSORY ESTOPPEL

For the fourth cause of action against the Defendants, Plaintiffs hereby incorporate by reference those items set forth in the paragraphs 1-77 above, and further state and allege the following:

78. In a phone call, an employee of the Defendants, believed to be Andy Johnson, identified himself as the Environmental Health and Safety Director of Jenny Lake Lodge, and told the Hartleys that he had spoken with Jenny Lake Lodge's risk management and instructed the Hartleys that they must seek medical attention immediately at Jenny Lake Lodge's expense.

79. He advised Mr. Crofoot that all the Hartleys should go to St. John's Medical Center in Jackson, Wyoming and begin the series of shots to treat rabies.

80. The employee continually stressed that Jenny Lake Lodge would cover all the Hartleys' medical expenses and emphasized the medical urgency to receive treatment.

81. This was a clear and definite promise or representation that the Defendants should reasonably have expected would induce action or forbearance on the part of the Hartleys.

82. This promise was also reflected in billing notes where Jenny Lake Lodge contacted St. John's on August 8, 2017 and confirmed that the Hartleys' bills were to be paid by Grand Teton Lodge Company, Jenny Lake Lodge, and left contact information for Andy Johnson, the Environmental Service Manager, and Rachel Busch, the General Manager. **Ex. 2-** *Billing Notes dated August 8, 2017.*

83. Based upon the Defendants' representations, the Hartleys did act to their detriment in reasonable reliance upon the promises and representations made by the Defendants.

84. Injustice can only be avoided by enforcement of the representations by requiring the Defendants to fulfil their promises.

**WHEREFORE,** the Plaintiffs, Dian Hartley, Patrick Crofoot and Taylor Hartley, pray for relief as follows:

1. For a judgment against the Defendants in an amount sufficient to invoke the jurisdiction of this Court and in order to compensate the Plaintiffs Dian Hartley, Patrick Crofoot and Taylor Hartley for their bodily injury, including all past, present and future medical expenses; past, present and future pain and suffering; past, present and future financial loss; past, present and future loss of enjoyment of life, and other damages as permitted by law.

2. For a judgment against the Defendants in an amount sufficient to compensate the Plaintiffs Dian Hartley, Patrick Crofoot and Taylor Hartley for their losses based off the negligent misrepresentations of the Defendants.

3. For a judgment against the Defendants in an amount sufficient to compensate the Plaintiffs Dian Hartley, Patrick Crofoot and Taylor Hartley for their damages related to their mental anguish resulting from the negligent infliction of emotional distress caused by the Defendants.

4. For a judgment against the Defendants in an amount sufficient to hold the Defendants to their promises.

5. For such other and further relief as the Court deems just and proper, including pre- and post-judgment interest and costs incurred in the prosecution of this action.

[remainder of page intentionally left blank]

**RESPECTFULLY SUBMITTED** this 25th day of October, 2019.

> DIAN HARTLEY,
> PATRICK CROFOOT and
> TAYLOR HARTLEY
> Plaintiffs,
>
> */s/ Patrick Lewallen*
> Patrick J. Lewallen 7-5544
> Thomas A. Valdez 6-3302
> CHAPMAN VALDEZ & LANSING
> 125 West 2nd Street (82601)
> P.O. Box 2710
> Casper, Wyoming 82602-2710
> (307) 237-1983
> (307) 577-1871 Facsimile
> plewallen@bslo.com
> tvaldez@bslo.com

https://www.jhnewsandguide.com/news/health/article_b6b58fe3-0d7e-58f2-abc2-9ff17b849934.html

# Students get rabies shots after bat exposure

By Kylie Mohr Jackson Hole Daily   Aug 4, 2017

After spending the night in a building with multiple bats, 13 people were pre-emptively treated at St. John's Medical Center with rabies post-exposure prophylaxis.

There is no indication as of yet that anyone has been bitten. Public health officials are continuing to evaluate people who were at the facility, but so far all individuals at risk have been identified.

The group, mostly college students participating in a program from Utah State University, realized they were in the same room as bats on Tuesday night at the AMK Ranch in Grand Teton National Park.

"We know there were lots, lots of bats," said Karl Musgrave, the state public health veterinarian.

The exact number remains unclear.

The exposure is being taken seriously because rabies is nearly universally fatal and there is no effective treatment once symptoms present themselves, physician and Teton County health officer Travis Riddell said.

"Bats are a relatively common reservoir for rabies in Wyoming," Riddell said. "This is probably a pretty low-risk situation, but because the consequences are so incredibly high, it's something that we take seriously from a public health perspective."

People don't always know if they've been bitten. In 2015 a Fremont County woman died of rabies, which was Wyoming's first recorded human rabies case. She didn't know she had a bite until it was too late.

PLAINTIFF'S EXHIBIT 1

"Seeing a bat flying around at night is not what we are worried about," said Alexia Harris, a state epidemiologist and state health officer. "We're looking for anyone who could have potentially had a bat bite they were aware or not aware of. Bats' teeth are extremely small, and you can be bitten without a visible sign of a wound."

Less than 1 percent of bats in the wild have rabies. The bats in the AMK structure aren't being captured and tested because there are too many to know for sure. If a single bat is found in a house, for example, Musgrave said that would be a more conclusive test.

Rabies can infect any mammal and affects the central nervous system, causing paralysis and ultimately death. Symptoms include behavior changes, including aggression, agitation and excessive salivation.

"It starts with general symptoms, like fever and weakness," Harris said. "It's a virus that gets into your nerves and travels up to your brain that results in changes in cognitive function."

The students involved are from Wyoming, Utah and Washington, D.C. They were visiting the University of Wyoming-National Park Service Research Center at the ranch, a historic property used for research and education purposes.

"We have had issues with bats in the buildings out there," said Chad Baldwin, UW's director of communications. "There is bat abatement work underway."

Denise Germann, public affairs officer for the park, said participants were moved out of their accommodations on Tuesday.

"While the occurrence of human-bat contact is rare, we take it very seriously," said Gopaul Noojibail, the park's deputy superintendent.

Musgrave said bats in old buildings in Wyoming are not unusual.

"Any rural mountain area has problems with bats," he said.

It is likely that construction will let bats out but not back in again, eventually reducing the number in the building.

Several agencies, including Grand Teton National Park, the University of Wyoming, the Centers for Disease Control and Prevention, the Wyoming Department of Health and Teton County Public Health, are involved.

St. John's temporarily ran out of the injection that is needed to treat rabies, known as rabies immune globulin. It provides antibodies against the rabies virus and is given as soon as exposure is known, ideally within 10 days of exposure.

Riddell said the hospital keeps five to seven doses in stock, which is "generally enough."

"Mass exposure like this is a rare scenario," he said.

St. John's has since ordered additional doses. Musgrave said the cost of prophylaxis varies from between $4,000 and $5,000 to $18,000 or $20,000 around the state.

"St. John's Medical Center did a tremendous thing by ordering more vaccines and immunizations and making sure these kids could have timely access," Harris said.

After the immune globulin is administered, a vaccine known as rabies post-exposure prophylaxis is administered immediately, three days after, seven days after and 14 days after the first dose. It enables people to produce their own antibodies against the rabies that are longer lasting.

"The vaccine is very effective when given appropriately and timely," Harris said.

Some people mistakenly believe the vaccine is abnormally painful.

"A lot of people who are afraid of the shot don't get it when they should," Musgrave said. "The vaccine now is very safe. It can be given to pregnant women, it can be given to infants, and very rarely are there any reactions. People shouldn't avoid getting the post-exposure prophylaxis because they remember stories about how the vaccine used to be painful. It's much different these days."

Harris urged people to get prophylaxis treatment even if it is after the 10-day window.

"Even if it is later than 10 days, start it," she said. "It's not like it would be too late."

*Contact Kylie Mohr at 732-7079, schools@jhnewsandguide.com or @JHNGschools.*

Patient Notes for Visit - 30747798                    Today's Date: 10/21/2019 11:3
Page 3 of

Patient Name: HARTLEY, DIAN C.

| Note Date/Time | Create by | Note Content |
|---|---|---|
| 09/27/2017 16:07 | pspiller | DELETED INVOICE FOR REBILLING |
| 09/27/2017 14:45 | rringen | recd call from pt informing that GTLC says they need to process through their own ins coverage, and GTLC will cover the balance due. Pt reviewed ins info and updated to acct to submit claim. |
| 09/20/2017 03:32 | SYSTEM | Statement Processed, balance of 17513.75 for invoice 30747798-0001Statement Path - NEW SELFPAY A-L, Step - 3 SP 2 |
| 09/04/2017 03:32 | SYSTEM | Statement Processed, balance of 17513.75 for invoice 30747798-0001Statement Path - NEW SELFPAY A-L, Step - 2 INS SP |
| 08/29/2017 13:17 | vbencomo | Andy called back from Teton Lodge, stated that yes they were going to pay for the bill. printed out summary of bill to mail to Grand Teton Lodge, ATTN: Andy Johnson, PO Box 250, Moran, WY 83013 |
| 08/29/2017 12:21 | vbencomo | working SP rpt, LM for Andy Johnson to call back, might be wk comp |
| 08/18/2017 03:32 | SYSTEM | Statement Processed, balance of 17513.75 for invoice 30747798-0001Statement Path - NEW SELFPAY A-L, Step - 1 INS SP |
| 08/18/2017 00:04 | CPGTECH | Billed, but not downloaded to Claims - 08/18/2017. For 30747798-0001. |
| 08/08/2017 16:55 | kwolfley | PT CHECKED OUT- I SENT INFO TO LIZ DEVINE |
| 08/08/2017 16:05 | kwolfley | Bill is to be Paid by:<br>GRAND TETON LODGE COMPANY, Jenny Lake Lodge<br>Contact Andy Johnson, Environmental Service Manger @ 307-543-3236<br>Contact Rachel Busch, General Manager |
| 08/08/2017 14:57 | kwolfley | A  Address type changed from HOME     to MAILING   for Address 6 DALLYON AVE ST AUGUSTINE,FL 3208( |
| 08/08/2017 14:50 | kwolfley | SCANNED DL, VA TRICARE, DEMOSHEET AND SIGNED CONSENT |
| 08/08/2017 14:37 | kwolfley | A  Social Security Number Changed from ▇▇▇▇0000 to ▇▇▇▇0302 |
| 08/08/2017 14:37 | kwolfley | A  Marital Status Changed from null to Married |


PLAINTIFF'S EXHIBIT 2